IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

LADARIUS HORTON, a minor )
child, by and through his )
mother and next friend, )
GERALDINE HORTON, )
                        )
         Plaintiff, )
                        )
vs. )   CASE NO. CV-00-TMP-2776-W
                        )
THE CITY OF NORTHPORT, )
ALABAMA, *et al.*, )
                        )
         Defendants. )



**ENTERED**

MAR 0 6 2002

### MEMORANDUM OPINION

    This cause is before the court on the motion for summary judgment filed on November 14, 2001, by the defendants: the City of Northport, Alabama; Billy Galloway, the city's police chief; and Tom Kimbrell, a police officer. The motion is supported by a brief and exhibits. The plaintiff, LaDarius Horton, who is suing by and through his mother, Geraldine Horton, filed a brief in opposition to the motion on December 4, 2001, and the defendants filed a reply brief on December 11, 2001. This matter has been fully briefed, and the court has considered the evidence and arguments set forth by all parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court submits this memorandum opinion.

## I.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own

affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the plaintiff.  On June 27, 2000, Mrs. Horton called the Northport Police Department to report an altercation.  The call resulted from an incident in which three neighborhood children were fighting with her two sons, LaDarius, then 6, and Jay, who was about 4.  The three boys, ages 7, 8, and 11, had been playing with her sons and the 7-year-old, Keante "Tutu" Thomas, began to hit LaDarius, threw a basketball at his legs, and threw rocks at both LaDarius and Mrs. Horton.  During the rock-throwing, LaDarius picked up a wooden stick or stake, about 12 inches long, to defend himself from Tutu.

Officer Kimbrell and an officer trainee were dispatched to the scene.  When Kimbrell arrived, he saw LaDarius hit Tutu on the back or shoulder twice with the stake, and he saw Tutu throwing rocks at LaDarius and Mrs. Horton.  Kimbrell got out of the car and told Mrs. Horton that he had seen LaDarius assault Tutu with a stick. Kimbrell moved to where Mrs. Horton was standing with Jay and LaDarius,[1] took the stake, and snatched up LaDarius by the collar

---

[1]     LaDarius' testimony indicates that he was standing near his mother, and that Kimbrell took the stake away from him.  Mrs. Horton's testimony indicates that she had already taken the stake away and was holding LaDarius when Kimbrell grabbed the child. At other times in her deposition, however, Mrs. Horton admits

and pants, lifting him into the air.  LaDarius cried out, and Mrs. Horton screamed and grabbed Kimbrell by the shirt.  She held onto Kimbrell, and he tried to use his elbow to make her let go.  In the struggle, as Kimbrell moved LaDarius toward the patrol car, Kimbrell let go of LaDarius with one hand, causing him to bump LaDarius into the side of the car as he put LaDarius into the front passenger seat.[2]  Kimbrell then fastened the seat belt around LaDarius.  He threatened that both LaDarius and Mrs. Horton would be "going to jail" if they didn't "shut up."  Both Kimbrell and Mrs. Horton shouted and used profanity.  Kimbrell also detained Tutu and fastened him into the back seat of the patrol car with a seat belt.

When the officers realized that the disturbance involved young children, they called a juvenile officer to the scene. During that time, LaDarius sat in the police car, and Jay sat with him.  His mother sat on the curb next to the car and held his hand. The car door remained open.  LaDarius screamed and cried and said

---

that before the police arrived, LaDarius "just wiggled out of my arms," and that he got the stake away from her after she took it from him.  Depo. of G. Horton, pp. 128-32.

[2]     In his deposition, LaDarius describes the incident this way: "[H]e got me from my mom and then my mom grabbed him and then I hit my side on the back of the car.  He picked me up and got me from my mom and then my mom grabbed him and then I hit my side on the back of the car."  LaDarius admits that the contact with the car resulted from his mother's conduct in grabbing Kimbrell.

he wanted a drink of water.  The other officer on the scene allowed Mrs. Horton to go into the house and get LaDarius a drink.

While waiting for the juvenile officer, Kimbrell interviewed witnesses and filled out an incident report.  The juvenile investigator arrived within 30 minutes of Kimbrell's arrival and told Kimbrell to release the two boys.  Kimbrell and the juvenile officer talked with the guardians of the children involved in the altercation.  While releasing LaDarius from the seat belt, Kimbrell inadvertently struck or bumped LaDarius under the chin with his hand or forearm, causing  the boy to bite his own tongue.  He then ordered LaDarius to get his "whiny-ass" out of the patrol car.

After the incident, LaDarius had a bruise on his side and a cut on his tongue.  He also developed a fear of police officers, had trouble sleeping, and had nightmares.

Later that day, Mrs. Horton complained to the Northport Police about Kimbrell's rough conduct.  A police officer, Steve Foster, came to her house about 9 p.m. that night and took her statement. When she called repeatedly to check the status of her complaint, she was told that they were "working on it."  She visited the police station to again complain, and she met with Galloway, who appeared to be unaware of her complaint.  She later wrote a letter to Chief Galloway, but he did not respond.

The City of Northport requires its officers to receive at least 88 hours of training per year.  The training includes instruction on the use of force and proper handling of situations involving juveniles.

On October 2, 2000, plaintiff filed a complaint commencing this action, asserting that the City of Northport, Kimbrell, and Galloway violated his Fourth Amendment rights by unlawfully seizing him and by using excessive force.  On October 24, 2000, plaintiff amended the complaint to add state law claims of assault and battery, negligence, and outrage against Kimbrell, and negligent supervision and/or retention against Galloway.

### III. DISCUSSION

The defendants assert in their motion for summary judgment that they are entitled to summary judgment as a matter of law on all of plaintiff's claims.  They contend that Kimbrell and Galloway are entitled to qualified immunity because their actions do not violate clearly established federal law.  They further contend that the allegations do not constitute "unreasonable" conduct proscribed by the Fourth Amendment.  As directed by the Supreme Court and the Eleventh Circuit, the court is first required to determine whether the evidence establishes a constitutional violation, then, if so, consider whether the individual defendants are entitled to

8

qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry."); <u>Siegert v. Gilley</u>, 500 U.S. 226, 232, , 114 L.Ed.2d 277 (1991); <u>Pace v. Capobianco</u>, ___ F.3d ___, 2002 WL 331959 (11th Cir. 2002).

### A. Reasonableness of Force

The plaintiff claims that his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments were violated when Kimbrell picked him up and then detained him for about 30 minutes in the police car. The Supreme Court has determined that all claims of excessive force and illegal seizure "should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." <u>Graham v. Connor</u>, 490 U.S. 386, 109 S. Ct. 1865 (1989); <u>Pace v. Capobianco</u>, ___ F.3d ___, 2002 WL 331959 (11th Cir. 2002). Furthermore, the Eleventh Circuit Court of Appeals has established that an excessive force claim requires evidence from which a reasonable jury could conclude that the force used was "objectively unreasonable."

Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998).
Summary judgment in favor of the defendants is appropriate where "a
reasonable officer in the same situation would have believed that
the force used was not excessive." Id. The court does not judge
the acts of police officers with the aid of hindsight, but looks at
"what they knew (or reasonably should have known) at the time of
the act." Rodriguez v. Farrell, No. 00-13147 (11th Cir., Jan. 30,
2002). Quoting from Graham, the Eleventh Circuit recently
reiterated, "In addition, we must allow 'for the fact that police
officers are often forced to make split-second judgments--in
circumstances that are tense, uncertain, and rapidly
evolving--about the amount of force that is necessary in a
particular situation.'" Pace v. Capobianco, ___ F.3d ___, 2002 WL
331959 (11th Cir. 2002)(quoting Graham v. Connor, 490 U.S. 386, 109
S. Ct. 1865 (1989)).

The plaintiff in this case has failed to demonstrate that the
force used in seizing LaDarius was objectively unreasonable.
Viewing the facts in the light most favorable to the plaintiff,
Kimbrell was called to the scene of an altercation, where he
witnessed LaDarius in the act of assaulting another child.
Kimbrell removed the weapon, the 12-inch stake, and then picked up
LaDarius. The only evidence that Kimbrell handled LaDarius roughly
is Mrs. Horton's testimony that Kimbrell lifted LaDarius over his

10

head, and that LaDarius was bumped against the car and "thrown" into the seat.  However, it is undisputed that Kimbrell was placing LaDarius into the car while being held around the waist by Mrs. Horton, struggling with her as well as LaDarius.

There is no evidence that Kimbrell intended to injure LaDarius when he placed him in the car.  Kimbrell has stated that he was struggling to get Mrs. Horton to turn loose of LaDarius.  The fact that Kimbrell seated LaDarius in the car with the seat belt as his only restraint indicates that Kimbrell was simply trying to remove LaDarius from the contentious situation and detain him while he got Tutu also under his control.  The only other evidence that plaintiff points to as evidence of excessive force is that LaDarius bit his tongue when the officer released the seat belt.  Again, there is no evidence that Kimbrell intended to injure LaDarius or that he acted violently in releasing the seatbelt.  The evidence indicates simply that the belt, or Kimbrell's forearm or hand, accidently bumped LaDarius' chin, causing LaDarius to bite his tongue.

In sum, Kimbrell had probable cause to seize LaDarius because he witnessed the child assaulting another child.  The officer certainly had a legal obligation to end the altercation and control the participants.  He detained LaDarius for only 30 minutes, only as long as it took for the juvenile officer to arrive and for the

11

incident report to be completed.  While LaDarius was detained, his
mother and brother were allowed to stay with him, hold his hand,
and bring him a drink of water.  Accordingly, the conduct of
Kimbrell was not "objectively unreasonable" and the defendants'
motion for summary judgment on the Fourth Amendment claims of
excessive force and illegal seizure is due to be granted for this
reason.

### B.  Qualified Immunity

#### 1. Kimbrell and Galloway

As an alternative to the finding that the the evidence fails
to show that Kimbrell acted in violation of the Fourth Amendment,
he also is entitled to qualified immunity.  Under federal law, it
is well settled that qualified immunity protects government
officials performing discretionary functions from civil suit, and
from liability, where their conduct does not violate "clearly
established statutory or constitutional rights."   Lassiter v.
Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)(citing
Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73
L. Ed. 2d 396 (1982))(additional citations omitted).  Furthermore,
it is the general rule that qualified immunity will protect
government actors from liability, and only in "exceptional cases"
will the immunity be unavailable as a shield.   Id.   Even so,

qualified immunity does not apply in those instances where the law has "been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place," that the actions violate federal law.  Id. It is not necessary that the facts of the cases relied upon as the "clearly established law" be the same as in the instant case, but they "do need to be materially similar".  Id. at 1150.

In this case, the plaintiff does not dispute that Kimbrell and Galloway "were acting pursuant to their discretionary authority." Consequently, in order to determine whether the defendants are shielded from the § 1983 claims by qualified immunity, the court need only determine whether the defendants violated clearly established federal law.  Plaintiff asserts that his detention by Kimbrell was an illegal seizure and that Kimbrell used excessive force.  Plaintiff does not point to any "clearly established law" that the defendants allegedly violated; plaintiff merely asserts that "no reasonable person" could find Kimbrell's actions to be reasonable.  Plaintiff does not offer any authority for this contention, and the court finds none.  Indeed, the court has found no Supreme Court of Eleventh Circuit case holding that it violates the rights of a child to physically restrain him from continuing to assault another child by picking the child up and securing him with a seatbelt in the seat of a police cruiser.  In the absence of such

13

a factually similar case, the court cannot say that the Fourth Amendment law was so clearly established that Kimbrell should have known that his conduct was illegal (which it was not).

Further, there simply is no basis for concluding that Chief Galloway was on notice that Kimbrell's conduct violated the plaintiff's Fourth Amendment rights, indeed, that he was even aware of the conduct when it occurred.  There is no evidence showing that Galloway participated in even the alleged violation of the plaintiff's rights, much less that he should have known that the conduct was illegal (which it was not).  Accordingly, Kimbrell and Galloway, sued in their individual capacities,[3] are shielded by qualified immunity, and their motion for summary judgment is due to be granted.


### 2.  City of Northport

The doctrine of qualified immunity does not protect the City of Northport from liability.  At the same time, Northport cannot be held liable simply because it was the employer of Kimbrell and/or Galloway.  Liability under § 1983 cannot be predicated merely on a

---

[3]     The plaintiff also names Kimbrell and Galloway as defendants in their official capacities, which is simply another manner in which the plaintiff may join the city as a defendant. See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).  The viability of the claims against Northport are addressed separately, infra.

theory of *respondeat superior*.    Monell v. Department of Social
Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978);
Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).    In
Gold, the Eleventh Circuit Court of Appeals explained:

> The Supreme Court has placed strict limitations on
> municipal liability under section 1983. There is no
> respondeat superior liability making a municipality
> liable for the wrongful actions of its police officers in
> making a false arrest.    See *Monell v. Department of
> Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L.
> Ed. 2d 611 (1978).  Instead, a municipality may be held
> liable for the actions of a police officer only when
> municipal "official policy" causes a constitutional
> violation.    See *id.* at 694-95, 98 S. Ct. 2018. [A
> plaintiff] must "identify a municipal 'policy' or
> 'custom' that caused [his] injury," *Board of County
> Comm'rs v. Brown*, 520 U.S. 397, 137 L. Ed. 2d 626, 117 S.
> Ct. 1382, 1388 (1997) (citing *Monell*, 436 U.S. at 694, 98
> S. Ct. 2018); "It is only when the 'execution of the
> government's policy or custom ... inflicts the injury'
> that the municipality may be held liable under § 1983."
> *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct.
> 1197, 103 L. Ed. 2d 412 (1989).

> Thus, the City is not automatically liable under section
> 1983 even if it inadequately trained or supervised its
> police officers and those officers violated [plaintiff's]
> constitutional rights. Instead, the Supreme Court has
> explained that there are only "limited circumstances" in
> which an allegation of a failure to train or supervise
> can be the basis for liability under § 1983. See *City of
> Canton*, 489 U.S. at 387, 109 S. Ct. 1197. The Supreme
> Court has instructed that these "limited circumstances"
> occur only where the municipality inadequately trains or
> supervises its employees, this failure to train or
> supervise is a city policy, and that city policy causes
> the employees to violate a citizen's constitutional
> rights.  *Id.* at 389-91, 109 S. Ct. 1197; see also *Kerr v.
> City of West Palm Beach*, 875 F.2d 1546, 1555 (11th Cir.

1989); *Brown*, 520 U.S. at ___, ___, 117 S. Ct. at 1388, 1390.

Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has further explained that a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants, as follows:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition ... that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.... "Municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality - a "policy" as defined by our prior cases - can a city be liable for such a failure under § 1983.

*City of Canton*, 489 U.S. at 388-89, 109 S. Ct. 1197 (internal citations omitted).

To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. See *Board of County Comm'rs v. Brown*, 520 U.S.

16

397, 117 S. Ct. 1382, 1390-91, 137 L. Ed. 2d 626 (1997); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171-72 (11th Cir. 1995); *Church v. City of Huntsville*, 30 F.3d 1332, 1342-46 (11th Cir. 1994); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990); *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1556-57 (11th Cir. 1989).   This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise.  For example, in *Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990), this Court held that a sheriff's department was not liable for a deputy's acts when "no evidence of a history of widespread prior abuse ... put the sheriff on notice of the need for improved training or supervision." Id. at 674.   Indeed, in *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994), this Court reversed a district court's preliminary injunction against the City of Huntsville, holding that the plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the City was aware of a prior incident in which constitutional rights were similarly violated. *Id*. at 1342-46.  See also *Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train). More importantly, in  *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987), even though there had been ten citizen complaints about police officer Scheib, this Court held that the City did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit."  *Id*. at 1193.  This Court aptly noted, "Indeed, the number of complaints bears no relation to their validity." *Id*.

Gold v. City of Miami, 151 F.3d 1346, 1349-1351 (11th Cir. 1998).

In the instant case, plaintiff does not allege that Northport had an official policy or custom of approving the use of excessive police force or illegal detention of juveniles.  Neither does the

complaint allege that Northport was on notice of widespread or repeated uses of excessive force or illegal seizure by its officers that might create a duty on its part to provide better training or supervision.   Plaintiff simply has failed to carry his burden of producing evidence from which a reasonable jury might find that an official policy, custom, or practice of the City of Northport was a motivating force behind the manner in which plaintiff was briefly detained.   Accordingly, Northport is also entitled to summary judgment in its favor on the plaintiff's claims.

### C.  **State Law Claims**

In addition to the federal claims discussed *supra*, the plaintiff also alleges several state law claims.   Defendants Kimbrell and Galloway assert that they are immune from the state-law tort claims pursuant to <u>Alabama Code</u> § 6-5-338, which provides that "peace officers" are "deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."   The parties agree that the statute shields the individual defendants from liability unless their conduct was "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." <u>Couch v. City of Sheffield</u>, 708 So. 2d 144, 153 (Ala. 1998);

18

Wright v. Wynn, 682 So.2d 1, 2 (Ala. 1996)("[T]his Court has held that a state officer or employee is not protected under the doctrine of discretionary function immunity if he acts willfully, maliciously, fraudulently, or in bad faith."); Ex parte Tuscaloosa County, 796 So.2d 1100, 1107 (Ala. 2000)("[F]or a plaintiff's claim of malicious prosecution against a state agent to be submitted to the jury, where the state agent has moved for a judgment as a matter of law based on the defense of discretionary-function immunity, the plaintiff must have presented substantial evidence of malice in fact, or actual malice.").

Kimbrell's conduct has been examined by the court and, for all the reasons discussed *supra* that Kimbrell did not act unreasonably, there is no evidence that Kimbrell acted willfully, maliciously, or in bad faith.  Likewise, plaintiff's only other allegation, that Galloway negligently trained and/or supervised Kimbrell, also fails to show any malice or bad faith on Galloway's behalf directly linked to the seizure and detention of LaDarius.  Plaintiff has offered no evidence in response to the defendants' motion for summary judgment, which includes evidence that Kimbrell received adequate training and/or supervision.  Consequently, the defendants

are entitled to summary judgment in their favor on all of the plaintiff's state law claims.[4]

### IV.   CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by defendants in support of the motions for summary judgment, and in light of the plaintiff's failure to meet the burden of coming forward with evidence sufficient to create a genuine issue of material fact, this court determines that defendants' motions for summary judgment against plaintiff are due to be GRANTED and plaintiff's claims are due to be DISMISSED WITH PREJUDICE.

---

[4]     Plaintiff does not specifically plead state law claims against the City of Northport.  Defendants argue, however, that while Northport is not shielded from liability by § 6-5-338, the city is immune pursuant to § 11-47-190 on all claims except negligent supervision, for which defendants assert plaintiff has failed to offer any credible evidence.  To the extent that any such claims are pled, the court agrees and finds that the municipality is immune pursuant to Alabama statute on all claims except the negligent supervision claim, and that the negligence claim has no basis in fact.

A separate order will be entered in accordance with the findings and conclusions set forth herein.

The Clerk is DIRECTED to forward a copy of the foregoing Memorandum Opinion to all counsel of record.

DONE the 6th day of March, 2002.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

21